UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DISTRICT at LEXINGTON

CIVIL ACTION NO. 04-95-KSF

DIANE BROOKING                                                                                               PLAINTIFF

V.                                           **OPINION & ORDER**

HARTFORD LIFE & ACCIDENT
INSURANCE COMPANY                                                                                     DEFENDANT

\* \* \* \* \* \* \* \*

This matter is before the Court on the plaintiff's motions for judgment and prejudgment interest [DE #28] and for an award of attorney's fees and costs [DE #33].[1]

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In this ERISA action for long-term disability benefits, the Court originally entered summary judgment in favor of the defendant, ruling that the plan administrator's decision to terminate the plaintiff's long-term disability benefits was not arbitrary and capricious in that it was rational in light of the plan's provisions. On appeal, the Sixth Circuit reversed, holding that the administrator's decision that the plaintiff could perform certain sedentary work *was* arbitrary and capricious based on the uncontested fact that the plaintiff could not maintain a seated position for more than an hour at a time and that sitting provoked considerable pain. The appellate court remanded the case with instructions to grant the plaintiff's petition to reverse the

---

[1] The defendant has also filed a motion for leave to file surreply in opposition to plaintiff's motion for judgment and pre-judgment interest [DE# 34]. Because the Court has considered the surreply in ruling on the plaintiff's motion, this motion will be granted.

administrative decision, "thereby granting the long-term disability benefits due [the plaintiff] under the plan, along with any applicable interest."

## II.    MOTION FOR JUDGMENT AND PREJUDGMENT INTEREST

### A.    The Parties' Positions

According to the plaintiff, the total amount of the judgment to be entered should be the total long-term disability benefits payable from January 1, 2003, through July 20, 2006 (the plaintiff's 65th birthday). The plaintiff also asks the Court to include prejudgment interest at the rate of 12% until the date of judgment, based on Kentucky statutory rate found in K.R.S. § 304.12-235, compounded monthly.

The defendant objects to the plaintiff's motion, first arguing that the 12% Kentucky post-judgment rate is not applicable in this ERISA action. Instead, it asserts, the Court should use the federal rate specified in 28 U.S.C. § 1961, in accordance with numerous federal cases, and should compound interest only on an annual basis. It further argues that the plaintiff incorrectly compounded the interest monthly without any legal basis. The defendant also asserts that on June 19, 2006, it paid all past benefits due to the plaintiff through July 19, 2006, so the only issue that remains is what interest should be paid, if any, for the period January 1, 2003, through May 31, 2006.[2]

In reply, the plaintiff argues that the Sixth Circuit has approved several methods for calculating prejudgment interest rates, including (1) application of § 1961, which the plaintiff opposes; (2) use of the prime rate during the applicable period; (3) use of the prime rate plus 1%; and (4) application of the interest rate actually realized by the defendant while it had use of the

---

[2]     The parties agree that any prejudgment interest applies only to this period.

funds. In addition to these methods, the plaintiff asserts that the Kentucky statutory rate of 12% should be applied in the present case in order to make the plaintiff whole.

> B.   <u>Discussion</u>

There are a number of Sixth Circuit cases that the Court can turn to for guidance on this issue. The case of <u>Ford v. Uniroyal Pension Plan</u>, 154 F.3d 613 (6th Cir. 1998), is the leading Sixth Circuit authority on the application of prejudgment interest in ERISA cases. In <u>Ford</u>, the district court awarded prejudgment interest to a plaintiff who was due disability pension benefits under a retirement plan. The plaintiff argued that the court should use the 12% prejudgment interest rate mandated under Michigan law, but the district court ultimately utilized a 9% interest rate derived from the average interest rate of 52-week United States Treasury bills for the relevant period.

The Sixth Circuit stated that "[a]lthough ERISA does not mandate the award of prejudgment interest to prevailing plan participants, [it has] long recognized that the district court may do so at its discretion in accordance with general equitable principles." <u>Id.</u> at 616. The court also noted that "ERISA does not prescribe the applicable prejudgment interest rate or the method by which the district courts should calculate reasonable attorney fees." <u>Id.</u> at 615. Recognizing that federal courts often turn to state law when a federal statute is silent on a matter traditionally of state concern, the court ultimately determined that "the calculation of prejudgment interest is not" such an area and, with respect to ERISA cases, "incorporation of state standards in the calculation of prejudgment interest could frustrate ERISA's remedial scheme." <u>Id.</u>

The Sixth Circuit noted that an award of prejudgment interest cannot be punitive, as punitive damages are not permitted under ERISA; therefore, prejudgment interest may only be awarded to "compensate a beneficiary for the lost interest value of money wrongly withheld from him or her." Id. at 618. Thus, an excessive rate would overcompensate a plaintiff "in contravention of ERISA's remedial goals" and an exceedingly low rate that "fails to make the plaintiff whole by inadequately compensating him or her for the lost use of money" is equally improper. Id.

Ultimately, the Sixth Circuit held in Ford that application of the Michigan state rate, which according to the Michigan statute was high in order to compensate the prevailing party for litigation expenses, would have been excessive given that the court had separately provided for plaintiff's attorneys' fees and costs. The Sixth Circuit held that the district court did not abuse its discretion in applying a rate based on the average 52-week United Sates Treasury bill rate for the applicable period. It also later noted that "the statutory postjudgment framework set forth in 28 U.S.C. § 1961 is a reasonable method for calculating prejudgment interest awards." Id. at 619; see also McMurtry v. Paul Revere Life Ins. Co., 2000 WL 799342 (6th Cir. June 12, 2000) ("[A] district court is well within its discretion in equating the prejudgment interest rate with the postjudgment rate in an ERISA action.") (citing Ford).

In later cases discussing the same issue, the Sixth Circuit has noted that "[a]mong the constraints on a district court's discretion to shape an award of prejudgment interest in an ERISA case is the fact that we look with disfavor on simply adopting state law interest rates." Rybarczyk v. TRW, Inc., 235 F.3d 975, 985 (6th Cir. 2000) (quoting Ford) (citations omitted). "That is not to say, however, that the § 1961 rate is the only permissible prejudgment interest

rate." Id. at 986. In Rybarczyk, a case involving lump sum pension benefits that were improperly calculated, the court used the interest rate actually realized by the plan on the relevant funds, a rate which was easily subject to calculation.

In determining whether to award prejudgment interest in the first instance, the Sixth Circuit has noted that "[g]enerally, the beneficiaries of pension plans have a right to prejudgment interest on benefits wrongly withheld." Wells v. United States Steel & Carnegie Pension Fund, 76 F.3d 731, 737 (6th Cir. 1996). However, to be "wrongful," the payments need not be withheld in bad faith; it is sufficient that there were incorrectly withheld. "[A] finding of wrongdoing by the defendant is not a prerequisite to . . . an award [of prejudgment interest]." Id. at 738 (citations omitted). Thus, it is an abuse of discretion to not award prejudgment interest based only on a finding that there was no bad faith by the administrator.

The Court will award prejudgment interest in this case using the postjudgment interest rate set forth in 28 U.S.C. § 1961. In keeping with the cases cited above, the Court must reject the plaintiff's suggestion to use Kentucky 12% statutory interest rate. First, the Kentucky statute setting forth this interest rate expressly states that it applies "[i]f an insurer fails to make a good faith attempt to settle a claim . . . ." K.R.S. § 304.12-235(1). This language indicates an intent on behalf of the Kentucky legislature to set the rate high in order to punish insurers who act in bad faith; no such finding has ever been made in the present case. See, e.g., Morton v. Bank of the Bluegrass & Trust Co., 18 S.W.3d 353, 361 (Ky. Ct. App. 1999) (noting that a regulation substantially similar to K.R.S. § 304.12-235 was "meant to provide a *penalty* for insurers who deny a good faith attempt to settle a claim.") (emphasis supplied). The Kentucky state rate would

overcompensate the plaintiff for the lost funds, which would result in penalizing the defendant in violation of ERISA's remedial scheme.

The Court must also reject the plaintiff's suggestions that the rate be set at prime, prime plus 1%, or the actual rate of return earned by the defendant on these funds. As for the latter, this number is not subject to calculation in the present case. Unlike in Rybarczyk where the plaintiff should have been paid benefits from a single, identifiable fund that earned a specific return, the funds that should have been paid to the plaintiff in the present case did not come from a single, identifiable source. As for the use of prime or prime plus 1% as the rate, courts in other circuits have sanctioned the use of these rates. However, where as here the Sixth Circuit has specifically approved of using § 1961, the Court is of the opinion that that is the best option.

The Court must also consider the manner in which the prejudgment interest award should be calculated. Pursuant to 28 U.S.C. § 1961,

> interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.

Id. The federal statute also states that interest should be computed daily, but compounded annually. Id. § 1961(b). The Sixth Circuit acknowledged in Ford that in situations involving complicated calculations of a stream of payments occurring over a long period of time where the interest rates are not static, an average or "blended" rate may be used in calculating the accrued pre-judgment interest. Ford, at 619.

The parties agree that the relevant period for which the plaintiff is entitled to prejudgment interest is from January 1, 2003, to through May 31, 2006, and that the defendant has tendered a

check to the plaintiff in the amount of $58,499.75 ($1,372.16 per month), which represents the benefits due to the plaintiff under the plan, but does not include prejudgment interest. Based on the parties' suggestions, the Court will apply the following blended rates: 1.24% for calendar year 2003; 1.92% for calendar year 2004; 3.62 % for calendar year 2005; and 4.76% for January 1, 2006, through May 1, 2006.[3] Using this framework and the calculations as set forth in the exhibits to the parties' pleadings, the Court will enter judgment of $58,499.75 in the plaintiff's favor, plus $3,825.57 in prejudgment interest.

### III.     MOTION FOR ATTORNEYS' FEES

####     A.     The Parties' Positions

The plaintiff also moves for an award of attorneys' fees and costs of $29,587.66 pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), asserting that the five-factor test set forth in Secretary of Dep't of Labor v. King, 775 F.2d 666 (6th Cir. 1985) (per curiam), warrants this award. The defendant opposes any award of attorneys' fees, arguing that the Sixth Circuit did not instruct this Court to make any other award. Further, the plaintiff's motion fails to satisfy the five-part nuclei of concerns considered by courts to justify such an award. Finally, if any award is made, it should be reduced based upon the "lodestar" approach to analyzing fees. The defendant also opposes any presumption in favor of an award of fees simply because the plaintiff prevailed at the Sixth Circuit, as the appeals court has consistently ruled that no such presumption exists.

---

[3]     These were the numbers offered by the defendants; the plaintiff did not object specifically to the proposed rates, only to the application of this method generally.

In reply, the plaintiff argues that there is nothing in the Sixth Circuit's mandate that precludes a consideration of attorneys' fees at this stage of the litigation. Further, the Sixth Circuit's reversal changed who is the prevailing party, so a new analysis should be permitted. The plaintiff further reiterates why the five-factor test counsel in favor of an award in the present case, and further argues that the fee award should not be reduced.

**B. Discussion**

### 1. *Court's Authority to Consider Fees on Remand*

The Court must first consider the defendant's argument that an award of fees at this point in the litigation would be beyond the scope of the Sixth Circuit's remand order and mandate. The mandate remanded the case with instructions to grant the plaintiff's petition to reverse the administrative decision, thereby granting the long-term disability benefits due to the plaintiff, "along with any applicable interest." It is the Court's opinion that the Sixth Circuit's mandate did not intend to negate the provisions of ERISA that give this Court discretion to award reasonable attorneys' fees. Further, under the "mandate rule," the trial court may consider those issues not expressly or impliedly decided by the appellate court or the prior trial court. Jones v. Lewis, 957 F.2d 260, 262 (6th Cir. 1992). The Sixth Circuit did not expressly address the issue of attorneys' fees under 29 U.S.C. § 1132(g)(1) because that issue had not yet been brought before either court. Thus, this Court has the authority to consider an award of attorneys' fees on remand.

### 2. *Appropriateness of an Attorneys' Fee Award*

ERISA expressly authorizes the court in its discretion to award a party reasonable attorneys' fees:

> In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of the action to either party.

29 U.S.C. § 1132(g)(1). As with prejudgment interest, ERISA does not set forth the methodology by which a district court should calculate such an award. However, the Sixth Circuit requires the district court to consider five factors in deciding whether to award attorneys' fees in the first instance: (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions. Schwartz v. Gregori, 160 F.3d 1116, 1119 (6th Cir. 1998) (citing King, 775 F.2d at 669).

No single factor is determinative. Id. (citing Wells v. United States Steel, 76 F.3d 731, 736 (6th Cir. 1996)). Further, in this circuit, there is no presumption as to whether attorneys' fees will be awarded in cases other than those involving an employer's obligation to make contributions to a multi-employer plan. Armistead v. Vernitron Corp., 944 F.2d 1287, 1301-02 (6th Cir. 1991).

### a.     Defendant's Culpability or Bad Faith

The plaintiff argues that it is clear from the Sixth Circuit opinion that the defendant's decision to deny long-term benefits to the plaintiff was made in bad faith. She contends that the defendant's argument that it had given consideration to the plaintiff's record was a

misrepresentation to this Court, and that the defendant, as a fiduciary, allowed its own financial interest to taint its objectivity.

The defendant asserts that while the Sixth Circuit opinion held that the defendant's decision was arbitrary and capricious, it did not expressly hold that it was made in bad faith. In originally reviewing the case, this Court was of the opinion that the defendant had not acted arbitrarily or capriciously in denying benefits to the plaintiff. The defendant argues that the fact that two separate tribunals came to opposite conclusions is a clear indication that there was no bad faith.

The plaintiff points out that the Sixth Circuit noted in passing, in an unpublished opinion with no discussion, that a decision that was arbitrary and capricious satisfied the culpability requirement. Gatlin v. National Healthcare Corp., 16 Fed. Appx. 283, 290, 2001 WL 223732 (6th Cir. March 2, 2001). However, earlier in that opinion, the appellate court had expressly noted that the company's rigid position could be classified as "bad faith." Id. at 289.

There is another case the Court should consider. The procedural facts of Moon v. UNUM Provident Corp., 461 F.3d 639 (6th Cir. 2006), were very similar to the present case. The district court had ruled in favor of the plan and the plaintiff had appealed. On appeal, the Sixth Circuit determined that the plan's decision had been arbitrary and capricious and remanded the case with instructions to enter judgment in favor of the plaintiff. At that point, the plaintiff moved for attorneys' fees, which motion the district court denied, and the plaintiff appealed again.

In considering the attorneys' fee question on remand, the district court had noted that it was "difficult to conclude that Defendant acted in a culpable manner in this close case, where two of the four judges who reviewed this case [referring to the district court judge and Judge

-10-

Siler, who dissented on appeal] concluded that" the defendant's denial of benefits was not arbitrary and capricious. On appeal, the Sixth Circuit disagreed:

> [a]n arbitrary and capricious denial of benefits does not necessarily indicate culpability or bad faith. However, in this case, [Defendant] ignored overwhelming evidence of [Plaintiff's] disability, and, instead denied her claim based on a theory that lacked legitimate foundation. [Defendant] then sought to defend this theory with reference to isolated snippets from the record.

Id. at 643 (quoting Heffernan v. UNUM Life Ins. Co. of Am., 101 Fed. Appx. 99, 109 (6th Cir. 2004)). In the earlier appellate decision, the Sixth Circuit had concluded that the plan had not provided a reasoned explanation that supported its outcome; that the plan's physician had engaged in only a selective review of the administrative record; and that the plan physician was also an employee of the plan, so his explanation should be viewed with some skepticism. Regarding the culpability/bad faith factor, the Sixth Circuit noted the following:

> Applying these facts to the question of whether the district court erred when it determined UNUM did not engage in culpable conduct, the answer is clear: UNUM engaged in culpable conduct and this factor should be weighed in Moon's favor and against UNUM. Not only did UNUM deny Moon's claims based solely on the opinion of a physician in its employ, but they also repeatedly denied her claims even though this physician ignored substantial evidence in the administrative record indicating she was disabled and the physician never examined Moon. Therefore, we must reject the district court's conclusion that "Defendant pursued their position in good faith and did not engage in any misconduct during the investigation or proceedings before this Court or on appeal." *Moon II,* 408 F. Supp.2d at 465. Without question, UNUM's wholesale adoption of the opinion of an interested physician, who based his findings on selective information in the administrative record and did not examine Moon, is misconduct that supports our decision to weigh this factor against UNUM. *See Spangler,* 313 F.3d at 362 ("we can only conclude that Met Life, as Spangler contends, 'cherry-picked' her file in hopes of obtaining a favorable report from the vocational consultant as to Spangler's ability to work.").

Id. at 643-644. The Sixth Circuit also chastised the district court for relying on its own overturned decision, labeling this reasoning an abuse of discretion.

> It is wholly inappropriate for the district court to rely on its overturned decision to support the denial of [the plaintiff's] petition for attorney's fees in the instant case. It is an affront to our system of justice for the district court to heavily and repeatedly rely on its incorrect decision to support its conclusion that [the plaintiff] was not entitled to attorney's fees.

Id. at 644.

In the present case, the Sixth Circuit found on appeal that the defendant had not offered a reasoned explanation for its decision to terminate the plaintiff's benefits and had not identified any job that the plaintiff could reasonably perform in light of her specific disabilities. It also found that the defendant ignored objective evidence of the plaintiff's pain, further supporting its conclusion that the defendant's decision was arbitrary and capricious. Ultimately, the Sixth Circuit concluded that the defendant had disregarded the clear medical evidence in the record, the medical opinion of the plaintiff's doctors, and the opinions of the doctors retained by the defendant itself and, thus, its decision was arbitrary and capricious.

Given the above, the Court cannot find a lack of culpability based on the fact that different jurists reached different conclusions as to the defendant's decision to terminate benefits. Further, it appears that in a situation where the Sixth Circuit has found that the defendant ignored substantial evidence in the administrative record, Moon requires the Court to find that the defendant was culpable and, therefore, this factor weighs in favor of an award of attorneys' fees.

b.      Defendant's Ability to Satisfy an Award

There is no evidence that the defendant could not satisfy an award of attorneys' fees in this case and the defendant does not raise this issue.

c.      Deterrent Effect

Pursuant to Foltice v. Guardsman Prods., Inc., 98 F.3d 933 (6th Cir. 1996), "the deterrent effect of a fee award on other plan administrators . . . is . . . likely to have more significance in a case where the defendant is highly culpable . . . ." Id. at 937. The Sixth Circuit noted that "[h]onest mistakes are bound to happen from time to time, and fee awards are likely to have the greatest deterrent effect where deliberate misconduct is in the offing." Id. Thus, the defendant argues, because there was no deliberate misconduct established in the present case, this factor should weigh in its favor. The defendant further argues that because the Sixth Circuit looked beyond the administrative record to the Railroad Retirement Act regulations defining "sedentary" and "light work" for the key piece of evidence necessary to reach its conclusion, its opinion will have limited deterrent effect, as others will not stray beyond the administrative record as the Sixth Circuit did.

The plaintiff cites to Powell v. Premier Mfg. Support Servs., Inc., 2006 WL 1529470 (M.D. Tenn. June 1, 2006), where the district court noted that "[a] fee award serves as a deterrent to conclusory statements that are devoid of specific and fact-supported reasons for denial of benefits." Id. The Court must also consider Moon, which is somewhat similar to the present case, wherein the Sixth Circuit stated the following:

> As discussed in conjunction with the first factor, this was not a close case. A majority panel of this Court decided that the district court's prior decision was

> incorrect and thus that decision cannot be relied upon by the district court as a basis for denying Moon's request for attorney's fees. The district court may disagree with the fact that its decision was overturned by this Court, but such disagreement would not justify denying Moon attorney's fees.
>
> In addition, the facts of this case are not so unique that they fail to serve any deterrence value to other insurance companies under similar circumstances. The majority's published decision in *Moon I* articulated important principles that all plan administrators should heed. For example, before terminating a plan participant's benefits, a plan administrator should ensure that the opinions upon which they rely to make their decisions to terminate are based on a thorough review of the administrative record. In addition, under certain circumstances, the opining physician's opinion should also be based upon an actual examination of the claimant. Thus, the published decision in the underlying case should deter other insurance companies from making the same arbitrary decisions as UNUM in the instant case.
>
> Finally, we also reject the district court's conclusion that the significance of this factor is diminished because UNUM did not act in bad faith. As discussed above, UNUM was culpable in this case.

Moon, 461 F.3d at 645.

In the present case, the deterrent effect is somewhat less than in the Moon case, as the appellate decision was not published so it is of limited value to plan administrators other than the defendant. Also, while the Moon panel might disagree, the Court does not believe that the defendant was shown to be "highly culpable." Therefore, the Court finds that this factor does not really weigh in either party's favor.

### d. Common Benefit

There is no evidence that the Court can find that the plaintiff sought through this action to confer a common benefit on all participants and beneficiaries of an ERISA plan, and the merits of this case did not turn on the resolution of any difficult ERISA question. Participants in and beneficiaries of the defendant's plan stood to gain nothing from this lawsuit. Any benefit that

others may gain from this lawsuit would be incidental. Therefore, this factor weighs against an award of fees.

### e. Relative Merits of the Parties' Positions

The plaintiff prevailed in this action before the Sixth Circuit, so it ultimately had the stronger position. However, the defendant argues that it had a legitimate basis for the defense of its position and that "this case was clearly a close call." Ultimately, given the Sixth Circuit's conclusion that the defendant acted arbitrarily and capriciously in terminating the plaintiff's benefits and because it would likely find that the defendant was also culpable, this factor weighs in favor of an award of fees.

Based on all of the above, the Court will award fees in this matter.

### 3. *The Amount of the Attorneys' Fee Award*

This circuit requires a district court to apply the "lodestar" method in calculating the appropriate fee award. Building Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway, 46 F.3d 1392, 1401 (6th Cir. 1995). This method requires at a minimum multiplying "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

As for rates, the plaintiff asserts that the hourly rates of her attorney, M. Austin Mehr (at $250 per hour), and his associates, Wesley Deskins and Timothy Geertz (at $110 per hour), are reasonable. Much of the work was done under Mr. Mehr's supervision by the associates at lower rates. The defendant does not challenge the rates charged by plaintiff's counsel, only the amount of time they spent on the case.

The plaintiff asserts that the total time spent on the case – 87 hours for Mr. Mehr, 52 hours for Mr. Deskins, and 12 hours for Mr. Geertz – is reasonable given the case's procedural history. Four briefs were filed at the district court level and two briefs at the appellate level. The administrative record alone was 667 pages long. The plaintiff also had to respond to the defendant's motion for reconsideration at the appellate level. The plaintiff also points out that this Court has previously approved a fee award in a similar case involving more hours, a smaller administrative record, and no appeal. Napier v. Hartford Life Ins. Co., Civil No. 02-497-KSF (E.D. Ky. Oct. 16, 2003).

The defendant argues that any fee award should be reduced to exclude time spent on discovery that was not necessary under ERISA; time spent on an unsuccessful appellate motion for publication; Mr. Geertz's travel time to the Sixth Circuit; and time spent in responding to the defendant's motion to strike. The defendant also argues that the time Mr. Mehr spent preparing for oral argument at the Sixth Circuit was excessive.

After reviewing the affidavit submitted by plaintiff's counsel, the Court finds that the amount of time spent on this case was reasonable. Thus, the Court will award the requested fees of $29,587.66.

IV.     CONCLUSION

Based on the above, the Court, having reviewed the record and being otherwise sufficiently advised, HEREBY ORDERS that

   (1)   the plaintiff's motions for judgment and prejudgment interest [DE #28] is GRANTED IN PART and DENIED IN PART in accordance with this opinion;

   (2)   the Court will award prejudgment interest as outlined above;

(3)  the plaintiff's motion for an award of attorney's fees and costs [DE #33] is GRANTED;

(4)  the motion for leave to file surreply in opposition to plaintiff's motion for judgment and pre-judgment interest [DE# 34] is GRANTED; and

(5)  judgment shall be entered contemporaneously herewith.

This March 12, 2007.

Signed By:
*Karl S. Forester*  KSF
United States Senior Judge